Ricky ELLIOTT,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Worldwide Auditing Services, Inc. and Dr. Morris Kliger and Dr. Steven Sklar.

Civ. A. No. 91–3487.

United States District Court,
E.D. Pennsylvania.

Feb. 20, 1992.

488

Joel M. Lieberman, Philadelphia, Pa., for plaintiff.

James T. Moughan, Lori A. Mills, Melvin R. Shuster, Janet W. Mason, Philadelphia, Pa., for defendants.

### MEMORANDUM

WALDMAN, District Judge.

### I.  BACKGROUND

Plaintiff filed this action in the Philadelphia Court of Common Pleas, asserting RICO and state law claims.  Defendants timely removed the action based upon this court's diversity jurisdiction under 28 U.S.C. § 1332.  Presently before the court is defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Motion to Dismiss the Amended Complaint pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim.

Defendants Worldwide Auditing Services, Inc. ("Worldwide"), Dr. Morris Kliger and Dr. Steven Sklar also seek to dismiss the complaint for failure to state a cognizable claim.  Alternatively, these defendants move for a more definite pleading pursuant to Fed.R.Civ.P. 12(e).[1]

---

1.  Plaintiff filed an amended complaint, apparently in response to defendants' motions to dismiss.  Pursuant to a stipulation of the parties, the court will consider State Farm's Motion as a Motion to Dismiss plaintiff's Amended Complaint.  Worldwide, Dr. Kliger and Dr. Sklar

## II. LEGAL STANDARD

In deciding a motion to dismiss for failure to state a cognizable claim, the court must accept as true all of plaintiffs' factual allegations and draw from them all reasonable inferences favorable to the plaintiff. *D.P. Enterprises, Inc. v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984). A case should not be dismissed for failure to state a claim unless it clearly appears that no relief can be granted under any set of facts that could be proved consistent with plaintiffs' allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). A Rule 12(b)(6) motion may be granted as to portions of a complaint. *Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 115 (2d Cir.1982); *Fielding v. Brebbia,* 399 F.2d 1003, 1006 (D.C.Cir.1968).

## III. FACTS

The facts in a light most favorable to plaintiff are as follow. State Farm issued an automobile insurance policy to plaintiff.[2] On June 14, 1990, plaintiff was involved in an automobile accident in which he suffered injuries which required medical attention. Plaintiff submitted to State Farm medical bills for which he sought reimbursement. Relying on an assessment of plaintiff's claim by defendants Worldwide, Dr. Kliger and Dr. Sklar, State Farm disallowed plaintiffs' claim for benefits.

Defendant Worldwide is in the business of auditing the services that doctors and other health care providers render to persons claiming insurance benefits to determine whether the treatment provided was necessary and the cost reasonable. Dr. Kliger and Dr. Sklar are employees or agents of Worldwide who reviewed the claims which plaintiff submitted to State Farm.

## IV. DISCUSSION

In Count I of his complaint plaintiff seeks payment of first party benefits which were allegedly unreasonably denied by State Farm. In Count II, plaintiff alleges that State Farm further violated Pennsylvania law by unreasonably denying these benefits without first obtaining medical examinations. In conjunction with these claims, plaintiff seeks punitive damages for State Farm's alleged bad faith under 42 Pa.Cons.Stat.Ann. § 8371. Count III alleges that State Farm misrepresented the terms and conditions of the contract to plaintiff. Count IV seeks punitive damages for State Farm's alleged wanton and malicious behavior. Count IX alleges State Farm's violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law. Finally, plaintiff asserts two RICO counts alleging that all of the defendants conspired improperly to reject, in whole or in part, claims for injuries such as plaintiff's; that as part of this "policy and practice," State Farm paid Worldwide a "contingency fee" representing a percentage of the amount saved through each rejected claim; that this fee was in essence a "kickback"; and, that plaintiff's claim was rejected pursuant to this conspiracy.

Counts VI and VII are directed specifically against Worldwide, Dr. Kliger and Dr. Sklar. While they are not a model of clarity, they appear to assert claims for fraud and misrepresentation and seek punitive as well as compensatory damages.

### A. *Plaintiff's MVFRL Claims*

Plaintiff alleges that defendant State Farm violated the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.Cons.Stat.Ann. §§ 1701 *et seq.,* by refusing to pay or by paying late benefits claimed under plaintiff's insurance policy. Plaintiff alleges that he has complied with the provisions of MVFRL by submitting the requested affidavits, related medical reports, bills and lost wage verification.

State Farm contends that plaintiff lacks standing to bring this suit, and alter-

---

have filed a Motion to Dismiss the Amended Complaint which incorporates the submissions with their Motion to Dismiss the original complaint.

**2.** The date on which the parties entered into this contract is not alleged.

natively that plaintiff's failure to exhaust administrative remedies bars his claim.

The Act 6 amendments to MVFRL set forth provisions under which insurers are now required to contract with peer review organizations ("PROs") for the purpose of "confirming that treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary." 75 Pa.Cons.Stat. Ann. § 1797(b)(1). Defendant contends that the purpose of the statute was to remove the insured from conflicts over payment for medical services and that the only party who may bring an action challenging a PRO determination is the health care provider.

Although the statute indicates a clear preference for the provider to bear the burden of challenging a denial of benefits,[3] the statute does not eliminate an insured's right to challenge ·denial of his first party benefits. Where an insurer unreasonably refuses to pay first-party benefits and fails to submit a claim to a PRO, an insured may bring an action against the insurer. Section 1797(b)(4) provides:

> (4) Appeal to court. A provider of medical treatment or rehabilitative services or merchandise *or an insured* may challenge before a court an insurer's refusal to pay for past of future medical treatment or rehabilitative services or merchandise, the reasonableness or necessity of which the insurer has not challenged before a PRO. Conduct considered to be wanton shall be subject to a payment of treble damages to the injured party.

75 Pa.Cons.Stat.Ann. § 1797(b)(4) (emphasis added). It does not follow that once the claim has been submitted to a PRO, an insured loses his right to bring a court action challenging an unreasonable denial of his claim. *See Danton v. State Farm Mut. Auto. Ins. Co.,* 769 F.Supp. 174, 176 (E.D.Pa.1991) (citing 31 Pa.Code § 68.2(c)) ("The Pennsylvania Department of Insurance in its guidelines has interpreted the procedures to mean that once the PRO has

decided whether the treatment was reasonable or necessary, the insurance company, provider or insured may appeal the decision to a court").

■ Alternatively, State Farm contends that plaintiff's failure to seek a reconsideration of the initial determination of the PRO prevents him from seeking redress in court. Section 1797(b)(2) provides that "[a]n insurer, provider or insured *may* request a reconsideration by the PRO of the PRO's initial determination." (emphasis added). The section does not state that the disappointed party *must* or *shall* seek re-evaluation. Accordingly, plaintiff's failure to pursue the administrative avenues provided by the statute is not fatal to his cause of action. *See Danton v. State Farm Mut. Auto. Ins. Co.,* 1991 WL 165211, *1 (E.D.Pa.1991) (Provider not required to seek reconsideration prior to appealing determination in court). Because plaintiff has sufficiently stated a cause of action to recover unpaid first party benefits, Count I will not be dismissed.

■ In Count II, plaintiff alleges that State Farm's denial of benefits without a voluntary or court-ordered physical examination of an insured is a violation of MVFRL. Plaintiff avers that the failure to conduct a medical examination constitutes an unreasonable practice which violates MVFRL and which entitles him to recovery under MVFRL. The court previously addressed this issue in *Chamberlain v. State Farm Mut. Auto. Ins. Co., et al.,* 1991 WL 108688, *1 (E.D.Pa. June 13, 1991): "The court is not persuaded that absent [a medical] examination pursuant to § 1796, insureds have an automatic right to receive payment for all bills submitted (up to $10,-000)." This does not mean, however, that a claimant who has been denied benefits is precluded from bringing a MVFRL claim. Because Count II appears to state a cognizable claim for unreasonable denial of benefits, the count will not be dismissed.

---

**3.** *See, e.g.,* 75 Pa.Cons.Stat.Ann. § 1797(a) ("Providers subject to this section may not bill the insured directly but must bill the insurer for a determination of the amount payable. The pro-

vider shall not bill or otherwise attempt to collect from the insured the difference between the provider's full charge and the amount paid by the insurer").

## B. *Misrepresentation and Fraud Claims*

■ Count III alleges that State Farm misrepresented the terms and conditions of plaintiff's insurance coverage with the intent of inducing plaintiff's justifiable reliance and that plaintiff did so rely. State Farm contends that because it agreed to pay only reasonable and necessary expenses, it never misrepresented the terms and conditions of plaintiff's policy. This argument presents a factual issue which cannot be resolved on a motion to dismiss.

■ Plaintiff also alleges a claim for punitive damages for State Farm's wanton and willful misrepresentation and fraud. State Farm argues that this claim (Count IV) is precluded by the Pennsylvania Supreme Court's opinion in *D'Ambrosio v. Pennsylvania Nat. Mut. Casualty Ins. Co.*, 494 Pa. 501, 431 A.2d 966 (1981), and that because it is really a contract claim, there is no right to punitive damages. The court previously addressed this issue in *Chamberlain* and concluded that an insured may seek punitive damages in conjunction with common law tort claims. *See Pekular v. Eich*, 355 Pa.Super. 276, 513 A.2d 427 (1986), *appeal den.*, 516 Pa. 635, 533 A.2d 93 (1987), and *Hardy v. Pennock Ins. Agency, Inc.*, 365 Pa.Super 206, 529 A.2d 471 (1987). Count IV will not be dismissed.

Counts VI and VII appear to allege misrepresentation and fraud claims against defendants Worldwide, Kliger and Sklar. Defendants contend that these claims should be dismissed for failure to state a claim upon which relief can be granted and for failure to plead with the specificity required by Fed.R.Civ.P. 9(b).

To sustain a cause of action for fraud, plaintiff must show:

(1) a specific false representation of material fact;

(2) knowledge of its falsity by the person who made it;

(3) ignorance of its falsity by the person to whom it was made;

(4) the intention that it should be acted upon; and

(5) plaintiff acted upon it to his damage.

*Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 99 (3d Cir.1983).

■ Plaintiff has not alleged that Worldwide or Drs. Kliger or Sklar made any misrepresentation to *him* or on which *he* relied. Worldwide was retained by State Farm to audit, review and evaluate certain medical claims by insureds. Worldwide engaged Drs. Kliger and Sklar to perform the evaluations. This service was performed pursuant to the peer review process set forth in the MVFRL. Plaintiff appears to suggest that State Farm relied on Worldwide's conclusions and representations which Worldwide knew to be false. If so, perhaps State Farm has a cause of action against Worldwide, but plaintiff has not adequately set forth a fraud claim against Worldwide, Dr. Kliger or Dr. Sklar. Counts VI and VII, to the extent they allege fraud, will be dismissed.[4]

Defendants Worldwide, Kliger and Sklar also seek the dismissal of plaintiff's claims for intentional infliction of emotional distress. Plaintiff's amended complaint, however, does not appear to assert such a cause of action.

■ Counts VI and VII also seek punitive damages for defendants' wanton, grossly negligent and malicious conduct. A defendant may be liable for punitive damages if his conduct was malicious, wanton, wilful or oppressive, however, there is no independent cause of action for punitive damages. *See Rizzo v. Haines*, 520 Pa. 484, 555 A.2d 58 (1989). As plaintiff had not set forth a cognizable claim for misrepresentation, he cannot obtain an award of punitive damages for such alleged conduct.

---

4. *See also, Benjamin v. Nationwide Mutual Ins. Co., et al.*, No. 266 (Ct. of C.P., Philadelphia County, December 21, 1987) (Plaintiff's fraud claim against Worldwide dismissed where Worldwide "advised [insurance company] not to pay various claims based on its review of plaintiff's medical bills and the treatment rendered to her subsequent to plaintiff's purchase of her [insurance] policy").

### C. *Consumer Protection Law Claim*

■ In Count IX, plaintiff alleges that State Farm's conduct violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("CPL"). In its motion to dismiss this count, State Farm argues simply that its use of a PRO, in this case, Worldwide, as required by statute, cannot constitute a violation of the CPL.

The gravamen of plaintiff's claim is not State Farm's retention of Worldwide as a PRO. Rather, plaintiff avers that State Farm's concealment of material information, its contingency fee arrangement with Worldwide and its misrepresentation concerning the terms and conditions of the insurance contract constitute violations of the CPL. In *Chamberlain v. State Farm Mut. Ins. Co., supra* at \*6 and *Brownell v. State Farm Ins. Co.,* 757 F.Supp. 526, 531–32 (E.D.Pa.1991), the court addressed this issue at length. In view of *Pekular* and subsequent Pennsylvania cases, the court concluded that plaintiff's CPL claims—similar to those in the present case—were not precluded by the UIPA. In the intervening seven months, there has been no authority on this issue to change the court's prediction of how the Pennsylvania Supreme Court would decide this issue. Accordingly defendant's motion to dismiss Count IX will be denied.

### D. *Plaintiff's Claim of Bad Faith*

■ In Count V plaintiff seeks punitive damages against State Farm pursuant to 42 Pa.Cons.Stat.Ann. § 8371. This statute permits a court to award punitive damages if it finds that an insurer acted in bad faith toward an insured. State Farm makes two arguments in support of its motion to dismiss this count: (1) § 8371 does not apply to claims for first-party benefits under the

MVFRL and (2) § 8371 became effective on July 1, 1990 and was not intended to have a retroactive effect.

Several courts have noted the inconsistency between § 8371 and the MVFRL and have concluded that a plaintiff may not seek § 8371 punitive damages for the alleged denial of first party benefits by an insurer. *See, e.g., Livecchi v. Prudential Property and Casualty Ins. Co.,* No. 91–3712, 1992 WL 22233 (E.D.Pa. February 4, 1992); *Williams v. State Farm Mut. Ins. Co.,* 763 F.Supp. 121, 127 (E.D.Pa.1991); *Danton v. State Farm Mut. Auto. Ins. Co.,* 1991 WL 52794 at \*4, 1991 WL 52794 (E.D.Pa. April 4, 1991) ("[T]he legislature intended for the MVFRL Act 6 Amendments to provide the exclusive first party remedy for bad faith denials by insurance companies in regard to medical bills for automobile accident injuries").

In *Carson v. ITT Hartford Insurance Group,* 1991 WL 147469 (E.D.Pa.1991), the court considered the application of § 8371 to MVFRL first party benefit claims in the context of determining whether plaintiff's claims satisfied the amount in controversy requirement to establish diversity jurisdiction. Citing *Williams* and *Danton,* the court concluded that "in claims for first-party benefits under the MVFRL, the detailed procedures and remedies set forth in sections 1797 and 1798 are controlling." *Carson* at \*2. Like the plaintiff in *Carson,* plaintiff in the present case does not have a viable claim for punitive damages under § 8371.[5]

State Farm also contends that § 8371 cannot be applied retroactively to a contract entered into prior to the effective date of the statute.[6] While the court notes that most of the judges in this district to address the issue have rejected this argu-

---

**5.** As noted in *Carson,* the court does not conclude that an insured covered by MVFRL can never recover § 8371 damages. For example, "where a person's policy is revoked without cause or for an improper cause, the procedures and remedies in § 1797 do not apply and a claim under § 8371 might lie." *Carson* at \*2.

**6.** Defendant further contends that because plaintiff's accident occurred on June 14, 1990, § 8371 cannot be applied to his claim. The relevant date for determining the statute's application, however, is the date on which the insurer denied benefits not the date of the insured's accident. *See Liberty Mut. Ins. Co. v. Paper*

ment,[7] the conclusion that § 8371 cannot be applied to MVFRL claims for first-party benefits makes it unnecessary to reach this issue in this case. Because the exclusivity of the Act 6 amendments to MVFRL bars plaintiff's punitive damages claim under § 8371, Count V of plaintiff's complaint will be dismissed.

### E. Plaintiff's RICO Claims

■■■ Counts VIII and X assert RICO claims against all four defendants under 18 U.S.C. § 1962(c) and (d). Defendants contend that the McCarran–Ferguson Act, 15 U.S.C. § 1011 et seq., bars RICO claims against insurers where the PRO provisions of MVFRL apply.

In Brownell, supra, and Chamberlain, supra, this court applied the analysis set forth by the United States Supreme Court in SEC v. National Securities, Inc., 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969), and concluded that the McCarran–Ferguson Act did not preclude virtually identical RICO claims. The Act 6 amendments to MVFRL, however, were not in effect and therefore were not applicable in either of those cases. The relevant conduct in this case occurred after the effective date of the Act 6 amendments.

In Brownell, the court used the four factor analysis set forth in Cochran v. Paco, Inc., 606 F.2d 460 (5th Cir.1979) to determine whether § 1012(b) bars a nonantitrust, non-FTCA claim. The relevant factors are:

(1) whether the federal statute "specifically relates to the business of insurance,"

(2) whether the challenged activities constitute the "business of insurance,"

(3) whether the state has enacted any law for the purpose of regulating such activities;

(4) whether the federal statute would "invalidate, impair, or supersede such state law."

Id. at 464 (citing SEC v. National Securities, Inc., 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969).

The federal RICO statute clearly does not specifically relate to the business of insurance within the meaning of § 1012(b) of McCarran–Ferguson.

As to the second Cochran factor, the court in Brownell employed the three part test established in Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982) to determine whether a particular practice is part of the "business of insurance:"

(1) whether the practice has the effect of transferring or spreading a policyholder's risk;

(2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and

(3) whether the practice is limited to entities within the insurance industry.

Id.

In Pireno, the court found that a similar peer review process was not part of the "business of insurance." As noted in Brownell, however, the peer review process in Pireno was distinct from that established by the Act 6 amendments:

Pursuant to § 1797(b), insurers must contract with a peer review organization (PRO) to evaluate the necessity and reasonableness of health care services. The evaluation of a PRO is binding upon the insurer and insured, subject to the right to seek reconsideration by the PRO and,

---

Manufacturing Co., 753 F.Supp. 156, 160 (E.D.Pa.1990).

7. See American Franklin Life Ins. Co. v. Galati, 776 F.Supp. 1054 (E.D.Pa.1991); Santoro v. Allstate Ins. Co., 1991 WL 197419 (E.D.Pa. Sept. 25, 1991); Seeger v. Allstate Ins. Co., 776 F.Supp. 986 (M.D.Pa.1991); Smith v. Pennsylvania General Ins. Co., 1991 WL 172164 (E.D.Pa. Aug. 30, 1991); Coyne v. Allstate Ins. Co., 771 F.Supp. 673 (E.D.Pa.1991); American International Under-

writers Corp. v. Zurn Industries Inc., 771 F.Supp. 690 (W.D.Pa.1991); Shamusdeen v. Hartford Ins. Co., 1991 WL 108675 (E.D.Pa. June 17, 1991); McGrath v. Federal Ins. Co., 1991 WL 117391 (E.D.Pa. June 25, 1991); Wazlawick v. Allstate Ins. Co., 1990 WL 294273 (E.D.Pa. Sept. 28, 1990). Contra McAlister v. Sentry Ins. Co., 1991 WL 102973 (E.D.Pa. June 11, 1991); Bryant v. Liberty Mutual Ins. Co., 1990 WL 223126 (E.D.Pa. Dec. 20, 1990).

if disappointed, to seek court review. Thus, unlike the peer review process in *Pireno,* peer review in Pennsylvania is not merely advisory. When benefit claims are subject to mandatory peer review by a PRO whose evaluation is binding, subject only to a court appeal, the peer review process is integral to the insurer-insured relationship and becomes part of the "business of insurance." *Brownell,* 757 F.Supp. at 536. The court finds that the Act 6 Amendments which created a mandatory peer review process are part of the "business of insurance."

The third factor of the *Cochran* test requires the court to determine whether the state has enacted any law to regulate insurance activities. The conduct which is the subject of plaintiff's RICO claim is clearly regulated by Pennsylvania within the meaning of the McCarran–Ferguson Act. *See* Unfair Insurance Practices Act, 40 Pa.Cons.Stat.Ann. § 1171.1 *et seq.* ("The purpose of this act is to regulate trade practices in the business of insurance in accordance with the intent of [the McCarran–Ferguson Act]"). *See also* 75 Pa.Cons.Stat.Ann. § 1797 (establishing mandatory procedures for peer review of claims for benefits).

Finally, the court must consider whether plaintiff's RICO claim would "invalidate, impair, or supersede" any state insurance related law. In *Brownell,* the court noted that a RICO-fraud claim arguably "could impair the viability of § 1797(b)." *Brownell,* 757 F.Supp. at 536. The court, however, could not identify any state law that would be invalidated or superseded if plaintiff's RICO claims were permitted to proceed.

Plaintiff alleges that his first-party benefits were denied pursuant to a conspiracy between the insurer and the peer review agency. To the extent plaintiff alleges that mere participation in the peer review process constitutes civil RICO, plaintiff's RICO claims are barred by the McCarran–Ferguson Act. To the extent that plaintiff alleges that the defendants manipulated the peer review process to deny claims for benefits without regard to their merits, a scheme outside of the scope of the process contemplated by the statute, his RICO claim would not "invalidate, impair, or supersede" any state insurance related law. Indeed, "[t]he application of RICO to an alleged conspiracy of participants in the peer review process ... to undermine the integrity of that process would seem to supplement rather than supplant state law." *Brownell,* 757 F.Supp. at 536. To the extent plaintiff has alleged that defendants are misusing the peer review process illegally to defraud him, his RICO claims are not barred by the McCarran–Ferguson Act. Counts IX and XI will not be dismissed.

## V. CONCLUSION

State Farm's Motion to Dismiss the Amended Complaint will be granted as to Count V. The Motion by Worldwide and Drs. Kliger and Sklar to Dismiss the Amended Complaint will be granted as to Counts VI and VII. Counts, I, II, III, IV, VIII, IX and X will not be dismissed.