832 F.Supp. 122 (1993)
UNITED STATES of America
v.
COMMONWEALTH OF PENNSYLVANIA.
Civ. A. No. 93-2094.
United States District Court, E.D. Pennsylvania.
August 31, 1993.
*123 James P. Turner, Dept. of Justice, Civil Rights Div., Housing & Civil Enforce. Section, Washington, DC, Debra Leanne Wrobel Cohn, Michael J. Rotko, U.S. Attorney's Office, Philadelphia, PA, Janet Reno, U.S. Atty. Gen., Washington, DC, Mellie H. Nelson, Sp. Litigation Section-U.S. Dept. of Justice, Washington, DC, for U.S.
Thomas Brian York, Office of Legal Counsel, Harrisburg, PA, for defendants.
Edmond A. Tiryak, Philadelphia, PA, for intervenor-plaintiff.

MEMORANDUM
NEWCOMER, District Judge.
Presently before the Court is defendants' Motion to Dismiss this action pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) because plaintiff has failed to state a claim for relief.

I. Background:

The United States of America ("USA") brought this action under the Civil Rights of Institutionalized Persons Act of 1980 [CRIPA], 42 U.S.C. § 1997 et seq., alleging that the residents at the state-operated Embreeville Center ("Embreeville") are being deprived of rights secured to them by the United States Constitution. Defendants are the Commonwealth of Pennsylvania, as owner and operator of Embreeville, and Robert Casey, in his official capacity as governor of Pennsylvania. Also named as defendants are Karen F. Snider, Secretary of the Department of Welfare ("DPW"), and Nancy Thaler, Deputy Secretary of Mental Retardation of DPW, in their respective official capacities as administrators of Embreeville, and Reuben Shonebaum, Director of Embreeville, in his capacity as day-to-day operations manager of the facility.
The USA avers that defendants have failed to protect residents from abuse and neglect, to provide the necessary level of individualized training and behavioral programs, to provide adequate medical care, to ensure an adequate and sufficiently trained staff, to safeguard residents from improper and excessive administration of psychotropic medications, and to accurately maintain resident records. (¶¶ 16-21 of USA's complaint.)
Defendants' motion to dismiss specifically raises the following three issues for determination by this Court: (1) Whether substantive due process rights are implicated by the acts or omissions alleged by the USA pursuant to CRIPA; (2) Whether the factual allegations in the complaint are sufficient to support the requisite factual specificity in a filing of suit pursuant to CRIPA; and (3) Whether the pre-filing certification requirements of 42 U.S.C. § 1997b(a) have been satisfied. Each of these contentions will be dealt with in turn.

II. Standard of Review:

Under the standard of review for a motion to dismiss for failure to state a claim, all factual allegations in the complaint are taken as true and plaintiff must be given the benefit of every favorable inference that can be drawn from these allegations. Elliott v. State Farm Mut. Auto. Ins. Co., 786 F.Supp. 487, 489 (E.D.Pa.1992). Dismissal is only appropriate if it appears beyond a doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); In re Sunrise Securities Litigation, 793 F.Supp. 1306 (E.D.Pa.1992).

III. Discussion:

A. Constitutional Duty Owed

A threshold question in defendants' Motion to Dismiss is whether the state owes a constitutional duty to afford substantive due process rights to voluntarily confined residents of Embreeville. Defendants argue that since the state did not exercise its governmental power to force patients to come to or remain at Embreeville, the state did not act affirmatively in placing the residents, so substantive due process rights are not triggered. In support of their argument, defendants place emphasis on the nature of the *124 residents' initial voluntary commitment status.
Plaintiff argues that there should be no distinction between voluntary and involuntary residents of state mental health facilities. Plaintiff maintains that there is sufficient affirmative state action such that all residents are entitled to these basic constitutional rights. The constitutionally relevant factor, according to plaintiff, is the residents' custodial status, and the residents' total dependence on the state for their well-being.
While the Supreme Court has not expressly addressed whether the substantive due process rights at issue here should extend to voluntary residents, I am persuaded that such an extension is consistent with the Court's understanding of due process rights. In Youngberg v. Romeo, 457 U.S. 307, 324, 102 S.Ct. 2452, 2462, 73 L.Ed.2d 28 (1982), the Court held that when a state takes a person into custody and holds that person against his will, the state owes a duty to provide reasonable care and safety, reasonable nonrestrictive confinement conditions, and the right to minimally adequate training. Although the Youngberg Court considered these rights in the context of involuntary confinement, it focused its rationale on the fact that the patients were "wholly dependent on the State." Id. at 319, 102 S.Ct. at 2460. The Supreme Court later explained in DeShaney v. Winnebago County DSS, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) that such rights derived from the principle that
when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs  e.g., food, clothing, shelter, medical care, and reasonable safety  it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.
Id. at 200, 109 S.Ct. at 1005.
DeShaney has been taken by this Circuit to stand for the proposition that "the state owes an affirmative duty to protect those physically in its custody." Philadelphia Police & Fire Ass'n v. City of Philadelphia, 874 F.2d 156, 167 (3d Cir.1989) (holding that the reduction or elimination of benefits for mentally retarded persons living at home did not violate equal protection or due process rights as the state had taken no affirmative act to restrain their freedom). In a subsequent case, the Third Circuit wrested further insight from the due process jurisprudence, determining that substantive due process rights are limited to persons whose personal liberty has been substantially curtailed by a state's affirmative act. Fialkowski v. Greenwich Home for Children, Inc., 921 F.2d 459 (3d Cir.1990).
Thus, the constitutional rights recognized in Youngberg represent a limitation on the state's power to restrict an individual's liberty. It is entirely consistent with this rationale that a state may act to restrict an individual's liberty when it either involuntarily commits that individual, or, at some point during the term of one's voluntary commitment, takes affirmative steps to restrain one's liberty.
Involuntary confinement through civil proceedings must not be the only litmus test for whether patients are in fact being deprived of constitutionally protected liberties. Civil involuntary commitments may be constitutionally justified by the prospect of satisfying the court-determined need for rehabilitation treatment, or where rehabilitation is impossible, minimally adequate habilitation and care. However, there is a continuing affirmative obligation on the state. In order to make the continued confinement constitutional, this quid pro quo concept of abridgment of constitutionally protected liberties for the recognized right to quality treatment must be ongoing.
Likewise, where the initial institutionalization of an individual is made pursuant to a "voluntary" decision, such institutionalization in its course may become one which necessarily curtails an individual's liberty, for instance, through excessive or inappropriate use of physical or chemical restraints. In such a case, the fundamentals of due process would be offended if treatment and care were not provided.
*125 The argument advanced by the State is not new and has been rejected by the courts in the past. See, e.g., Halderman v. Pennhurst State School and Hospital, 446 F.Supp. 1295, 1310-11 (E.D.Pa.1977), aff'd in part and rev'd in part on other grounds, 612 F.2d 84 (3d Cir.1979) (en banc); United States v. Commonwealth, Civ. No. 92-33J, Memorandum Order (W.D.Pa. May 6, 1992); United States v. Tennessee, 798 F.Supp. 483 (W.D.Tenn.1992). In Halderman, the court called the distinction between voluntarily and involuntarily committed patients "illusory", Halderman, 446 F.Supp. at 1310-11, and noted that "whenever a state accepts [mentally handicapped] individuals into its facilities, it cannot create or maintain those facilities in a manner which deprives those individuals of the basic necessities of life." Id. at 1318. Defendants assert that DeShaney and its progeny have altered the state's responsibilities to the mentally handicapped under Youngberg. This reading of DeShaney and subsequent cases is far too expansive. Halderman v. Pennhurst State School and Hospital, 784 F.Supp. 215, 222 (E.D.Pa.1992), aff'd, 977 F.2d 568 (3d Cir.1992). The court's holding in DeShaney did not eliminate the State's obligations under Youngberg. See Thomas S. ex rel. Brooks v. Flaherty, 902 F.2d 250, 254-55 (4th Cir.1990).
Therefore, this Court rejects defendants' argument that voluntarily confined patients are not entitled to the constitutional right to treatment and care by virtue of the "voluntariness" of their initial confinement. Where there is an instance of state-propounded curtailment of liberty, due process standards must be upheld. In this case, the constitutional right to treatment or habilitation extends to both involuntarily and voluntarily confined residents alike.
Accordingly, defendants' argument that plaintiff has failed to establish due process rights held by Embreeville residents is without merit.

B. Factual Specificity

Defendants next argue that plaintiff's complaint lacks the factual specificity required by the Third Circuit to state a claim for civil rights violations. While this court in the recent past has required a heightened level of factual specificity in civil rights actions, this is no longer the rule. The Supreme Court has recently addressed the pleading requirements for plaintiffs suing municipalities for civil rights violations. Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, ___ U.S. ___, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993). In Leatherman, the Supreme Court concluded that it was impossible to square the heightened pleading requirement in municipal liability cases with the liberal system of "notice pleading" set up by the Federal Rules. Id. at ___, 113 S.Ct. at 1163. The Court affirmed that the system of "notice pleading" applied to all causes of action unless otherwise specified in the rules, such as the particularity requirement imposed by Rule 9(b) for averments of fraud or mistake. Id. The Supreme Court explained that "Perhaps if Rules 8 and 9 were rewritten today, [other] claims ... might be subjected to the added specificity requirement of Rule 9(b).... But that is a result which must be obtained by the process of amending the Federal Rules, and not by judicial interpretation." Id.
Thus, as Leatherman affirms, the applicable standard may be found in Fed.R.Civ.P. 8(a)(2). It is well-settled that this rule means that a claimant need only "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." Id. The complaint here provides sufficient facts giving rise to the cause of action to put the proper defendants on notice of the essential elements of plaintiff's cause of action. Accordingly, in light of the Leatherman decision, plaintiff's complaint contains a short and plain statement of the claim, giving the defendants fair and adequate notice to respond.
Defendants further contend that plaintiff has failed to describe the personal participation of individual defendants named in the complaint, and in the absence of specific allegations to demonstrate such personal participation, defendants argue that the complaint must be dismissed. Defendants, however, do not accurately capture the purpose of CRIPA. Under CRIPA, liability may be imposed *126 upon a municipality, supervisory officers and the City for maintaining a deficient training policy and program, or other deprivation of constitutional rights. Plaintiff avers that Embreeville residents are being deprived of their constitutional rights pursuant to an alleged ongoing pattern and practice of deprivation. The alleged involvement of the named defendants is based on actions taken, or not taken, in their official capacities, acting on behalf of a State that is allegedly depriving residents of their constitutional rights. It is on this theory that plaintiff seeks to hold defendants liable in their official capacity, seeking corrective measures from those in a position to provide such relief. Accordingly, defendants' contention is without merit. As discussed in conference, however, the court will not allow plaintiff to conduct a trial by ambush. The court expects that the United States will fully document the alleged constitutional deprivations during the course of discovery and place the Commonwealth on notice of such specific deprivations in a timely manner.

C. Attorney General's Certification

Defendants' final contention is that the Attorney General has failed to adequately certify that certain prefiling requirements have been satisfied, as required by 42 U.S.C. § 1997b(a). Because the certification is deficient, defendants argue that the complaint must be dismissed. Plaintiff asserts that the case and legislative history indicates that the Attorney General's certification is not judicially reviewable.
The legislative history of CRIPA specifically states that the Attorney General's certification is not intended to be subject to judicial review:
As with certification requirements in other statutes, the facts and judgments contained in the certification under this Section [42 U.S.C. § 1997b] are not judicially reviewable and shall not be a matter of litigation in any way.
Joint Explanatory Statement of the Committee of Conference, H.R.Rep. No. 897, 96th Cong., 2nd Sess. 14, reprinted in 1980 U.S.C.C.A.N. 787, 832, 838. Moreover, there is nothing in the statute to indicate that the Attorney General must spell out that with which she certifies compliance. Rather, the statute merely requires that the Attorney General attest to the fact that she has indeed complied with the prefiling requirements set forth in 42 U.S.C. § 1997b. I find that Attorney General Janet Reno has in fact adequately made such a certification to this court.
Defendants, however, argue that if this court finds that the Attorney General's "conclusory" certification is not deficient in form, as I so find, then the court in effect is precluding review of whether compliance with the substantive requirements has occurred. Defendants contend that if the Attorney General were to be held to addressing the requisite specifies in her certification, it would be found that there is no factual basis to authorize this litigation at this time.
However, this type of substantive review, as plaintiff points out, is not authorized by case or legislative history. Many courts have observed the above-mentioned language of the Committee Report in denying such review. See United States v. State of Illinois, 803 F.Supp. 1338 (N.D.Ill.1992); United States v. State of New York, 690 F.Supp. 1201, 1204 (W.D.N.Y.1988); United States v. Massachusetts, No. 85-0632-M, slip op. (D.Mass. June 5, 1985); United States v. Oregon, No. 86-961-LE, slip op., 1987 WL 39761 (D.Or. Apr. 8, 1987). In State of New York, after reviewing the case law regarding this provision, the district court held that the prefiling requirements of CRIPA may not be reviewed even where it clearly appears from the record that the requirements have not been met. I find this history and reasoning persuasive.
Further, I note that even if such review were authorized, a party would be hard-pressed to establish a failure sufficient to warrant excursion into the issue of the validity of the certification. Of the actions which Congress has required the Attorney General to take, many are modified by the words "when feasible" or "to the extent feasible." The Joint Explanatory Statement maintains: "It is the intent of the Congress that the Attorney General take these actions to the extent the actions are capable of being successfully *127 done or accomplished." Joint Explanatory Statement, supra, at 839.
For these reasons, I find that defendants' challenge to the Attorney General's certification must fail, and I will deny Defendants' request to stay discovery for purposes of developing evidence that the requirements were not sufficiently satisfied.

IV. Conclusion:

Accordingly, I will deny defendants' Motion to Dismiss for lack of merit. Defendants shall be ordered to file an answer to plaintiff's complaint within five (5) days of this memorandum.
AND IT IS SO ORDERED.