## CONFEDERATION LIFE INSURANCE COMPANY

v.

## Linda S. GOODMAN, as Executrix of the Estate of Marvin J. Goodman.

### Civ. A. No. 93–4063.

United States District Court,
E.D. Pennsylvania.

Feb. 1, 1994.

Charles J. Bloom, Stevens & Lee, P.C., Wayne, PA, Paul J. Pantano, Jr., Amy E. Hancock, Leah Domitrovic, McDermott, Will & Emery, Nathalie F.P. Gilfoyle, Washington, DC, for plaintiff.

Lloyd A. Gelwan, Hoyle, Morris & Kerr, Michael E. Markovitz, Philadelphia, PA, Louis F. Burke, James P. O'Neill, Avrom E. Greenberg, John K. Shannon, Jr., Francis J. Hearn, Jr., Elizabeth G. Regan, New York City, for defendant.

## MEMORANDUM

O'NEILL, District Judge.

### I. Introduction

Currently before the Court is defendant's motion pursuant to Fed.R.Civ.P. Rule 12(b)(6) to dismiss plaintiff's cause of action under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"). Defendant moves that Counts III and IV of plaintiff's complaint be dismissed because (1) a Civil RICO claim abates upon the death of a party and (2) plaintiff lacks standing to bring a Civil RICO action because it cannot establish that the alleged RICO activity was the proximate cause of its injury.

### II. Legal Standard

 In reviewing a motion made pursuant to Fed.R.Civ.P. Rule 12(b)(6) to dismiss a plaintiff's cause of action for failure to state a cognizable claim, the court must accept as true all of plaintiff's well-pleaded factual allegations as well as all reasonable inferences favorable to the plaintiff that may be drawn from those factual allegations. *Elliott v. State Farm Mutual Automobile Insurance Co.*, 786 F.Supp. 487, 489 (E.D.Pa.1992). The Court should not dismiss a case for failure to state a claim unless it clearly appears that no relief can be granted under any set of facts that could be proved consistent with the plaintiff's allegations. *Id.*

### III. Facts

From about 1985 until his death on December 17, 1991, Marvin J. Goodman ("M.

Goodman") maintained eight separate commodity futures trading accounts which were carried by a futures commission merchant registered with the United States Commodity Futures Trading Commission. Plaintiff alleges that M. Goodman used these accounts to operate a multi-million dollar "Ponzi" scheme wherein M. Goodman solicited substantial investments from customers for the stated purpose of investing in the futures market. Plaintiff alleges that instead of investing these funds M. Goodman either converted them to his own use or used them to allocate fictitious trading profits to the existing accounts of his customers.

It is alleged that pursuant to this scheme M. Goodman created trusts which would, upon his death, divide trust assets among his customers in proportion to the size of their trading account assets at the time of his death. M. Goodman is alleged to have funded the trusts through the purchase of approximately 25 life insurance policies from 18 different companies including the plaintiff. These purchases constituted or affected interstate commerce. Plaintiff alleges that it and the other insurance companies issued these policies on the basis of material misrepresentations and omissions contained in M. Goodman's insurance policy applications.

Plaintiff asserts that M. Goodman's alleged acts constituted a pattern of racketeering activity in violation of RICO, that his trusts

and trading accounts constituted an enterprise and that M. Goodman and his estate are persons within the meaning of the Civil RICO statute. In Count III of its complaint, plaintiff alleges that M. Goodman violated 18 U.S.C. § 1962(a) and (d).[1] In Count IV of its complaint plaintiff alleges that M. Goodman violated 18 U.S.C. § 1962(c) and (d).[2] On the basis of M. Goodman's alleged RICO activities, plaintiff seeks to recover threefold damages from M. Goodman's estate pursuant to 18 U.S.C. § 1964(c).

## IV. Discussion

■ Although the Court of Appeals has not directly addressed the present question, defendant asserts that controlling precedent of this circuit mandates that this Court hold that Civil RICO claims do not survive the death of the defendant. I agree.

■ When a federal statute is silent upon the issue of survival, federal common law determines whether the claim survives or abates upon the death of one of the parties. *Carlson v. Green*, 446 U.S. 14, 23, 100 S.Ct. 1468, 1474, 64 L.Ed.2d 15 (1980). Courts that have considered the question of claim survival in the context of Civil RICO have adopted a common law rule that remedial claims survive while punitive claims abate upon the death of the defendant.[3] *See, e.g.*,

---

1. Title 18 U.S.C. § 1962(a) states, in relevant part:

   It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principle ... to use or invest, directly or indirectly, any part of the of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or activities which affect, interstate or foreign commerce.
   Assuming, without deciding, that an estate can be construed as a person for the purpose of Civil RICO under a broad reading of 18 U.S.C. § 1961(3), *see National Organization for Women, Inc. v. Scheidler*, — U.S. —, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) (stating that Civil RICO should be construed broadly to effectuate Congress' purpose), plaintiff has not alleged that the estate—as a person—was a principal in the RICO activities that M. Goodman is alleged to have committed. Therefore, the estate's potential

RICO liability under Count III is derivative of M. Goodman's alleged RICO liability.

2. Title 18 U.S.C. § 1962(c) states:

   It shall be unlawful for any person employed or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
   Plaintiff's complaint has not alleged that the estate was "employed or associated" with the alleged RICO enterprise so as to incur direct liability under Civil RICO. Therefore, as with the allegations of Count III, the estate's potential RICO liability under Count IV is derivative of M. Goodman's alleged RICO liability.

3. In addition to asserting that a RICO cause of action is primarily remedial in nature, plaintiff also asks the Court to adopt an alternative test for claim survival that focuses upon a determination of whether the claim seeks to recover dam-

*County of Oakland by Kuhn v. City of Detroit,* 784 F.Supp. 1275, 1284–85 (E.D.Mich. 1992) (holding that RICO civil penalties are primarily remedial); *State Farm Fire & Casualty Co. v. Estate of Caton,* 540 F.Supp. 673, 681 (N.D.Ind.1982) (holding that RICO civil penalties are primarily remedial), *overruled on other grounds, Ashland Oil, Inc. v. Arnett,* 656 F.Supp. 950, 953 (N.D.Ind.1987) (following *Tellis v. United States Fidelity and Guaranty Co.,* 805 F.2d 741, 746 (7th Cir.1986) (holding that Civil RICO claims are penal in nature in determining the appropriate statute of limitations to apply to the statute) *vacated in part* 483 U.S. 1015, 107 S.Ct. 3255, 97 L.Ed.2d 755 (1987)).

The Court of Appeals for the Third Circuit examined the remedial/punitive nature of Civil RICO to determine whether such claims could be maintained against a municipal corporation in *Genty v. Resolution Trust Corp.,* 937 F.2d 899 (3rd Cir.1991). After determining that Congress' primary intent in enacting Civil RICO was to punish wrongs against the public interest rather than to redress individual wrongs, the *Genty* Court stated:

> the furnishing of a civil remedy far in excess of the amount necessary to compensate an injured RICO victim is further confirmation that these damages are punitive. Although in some special contexts courts have stated that statutory multiple damages may be liquidated damages to assure the plaintiff's full compensation, the more generally applicable principle is that multiple damages are imposed as a penalty for egregious conduct of the wrongdoer and a means of deterring the future repetition of such conduct.

*Id.* at 912 (citations omitted).

Plaintiff responds that *Genty* should not control because that decision did not address directly the issue of survival of Civil RICO

claims and because "the outcome of that case clearly was driven by the court's reluctance to impose treble damages on the public." *See* Plaintiff's opposition at 4. Plaintiff also asserts that result in *Genty* cannot be squared with the Supreme Court's language in *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 240–41, 107 S.Ct. 2332, 2344–45, 96 L.Ed.2d 185 (1987), which acknowledged the remedial aspect of Civil RICO.

I cannot agree with plaintiff's assertions. A court may be required to determine the punitive or remedial character of a statute for many reasons.[4] In determining this question a court properly focuses upon the statute itself and not upon the purpose that the remedial/punitive determination will serve. If treble damages against a municipality "would impose punitive damages upon innocent taxpayers," *Genty,* 937 F.2d at 913, they also would impose punitive damages upon the estate of an alleged wrongdoer.

In regard to the language of the Supreme Court in *Shearson,* 482 U.S. at 240–241, 107 S.Ct. at 2344–45, the *Genty* Court itself considered the *Shearson* discussion and concluded that the fact that Congress in part intended Civil RICO to compensate victims did not change the fact that:

> RICO's overall purpose to thwart the generalized harm wrought by racketeering activity, its dependence on statutory crimes, and the *mandatory* provision of treble damages are sufficient evidence of Congress' intention that the treble damages provision serve a predominantly punitive purpose.

*Genty,* 937 F.2d at 914 (emphasis in original). Accordingly, I apply the holding of *Genty* to the case before me and conclude that Civil RICO claims do not survive the death of the defendant.

---

ages to property or to a person. After reviewing the approach adopted by other courts that have addressed this issue and in light of the fact that Civil RICO is obviously related to its criminal counterpart, I conclude that the punitive/remedial test should be applied.

4. In the context of Civil RICO for example, courts have addressed this issue to determine the applicability of the statute to municipal acts,

*Genty,* 937 F.2d at 899, the survivability of claims, *Kuhn,* 784 F.Supp. at 1284–85, the appropriate statute of limitations (prior to the Supreme Court's articulation of a uniform limitations period), *Arnett,* 656 F.Supp. at 953, and the applicability of the RICO treble damage provision against the FDIC as a receiver. *Summers v. Federal Deposit Insurance Corp.,* 592 F.Supp. 1240 (W.D.Okl.1984).

I therefore grant defendant's motion to dismiss Counts III and IV of the complaint. I do not reach defendant's claim that the plaintiff lacks standing to bring an action under Civil RICO because the plaintiff's injuries were not proximately caused by M. Goodman's alleged RICO activity.

## ORDER

AND NOW, this 1st day of February, 1994 upon consideration of defendant's motion to dismiss and the supporting and opposing memoranda thereto, it is hereby ORDERED that defendant's motion to dismiss Counts III and IV of plaintiff's complaint pursuant to Fed.R.Civ.P. 12(b)(6) is GRANTED. Counts III and IV of plaintiff's complaint are hereby DISMISSED.